IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION AT JACKSON

| | |
|---|---|
| **TAYLOR SULLIVAN,** | ) |
| Plaintiff, | ) Case No.: 1:19-cv-01259-STA-jay |
| **v.** | ) Judge: Chief Judge S. Thomas Anderson |
| **PANTHER PETROLEUM, LLC; and O'REILLY AUTOMOTIVE STORES, INC. d/b/a O'REILLY AUTO PARTS,** | ) |
| Defendants. | ) |

### DEFENDANT PANTHER PETROLEUM, LLC'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Panther Petroleum, LLC, by and through counsel, hereby respectfully submits this Motion to Dismiss all claims brought against it in Plaintiff Taylor Sullivan's Complaint. As set forth in the accompanying Memorandum in Support below, the Plaintiff's Complaint must be dismissed because it fails to state a claim upon which relief can be granted.

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### I.   INTRODUCTION

Plaintiff's Complaint asserts three causes of action against Defendant Panther Petroleum, LLC—one tort claim premised on negligence and two contract claims for breach of implied warranties—in an attempt to recover economic losses he allegedly incurred after purchasing cotton-picker grease from an O'Reilly Auto Parts store. But because the economic-loss rule bars Plaintiff's tort claim, and because the requisite privity of contract is lacking for Plaintiff's warranty

1

claims, the Complaint fails to state a claim upon which relief can be granted. Accordingly, this Court should dismiss all claims against Defendant Panther Petroleum, LLC, with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Taylor Sullivan ("Plaintiff") seeks to hold Defendant Panther Petroleum, LLC ("Panther") liable for economic losses he incurred after purchasing what he claims was "defective" cotton-picker grease from co-defendant O'Reilly Automotive Stores, Inc. d/b/a O'Reilly Auto Parts.[1] (*See* Doc. # 1). Specifically, Plaintiff claims that on September 4, 2018, he purchased "a large quantity of 'picker grease'" from the O'Reilly Auto Parts store in Ripley, Tennessee, because the cotton picker he uses to harvest cotton "requires grease to lubricate and protect its spindles." *Id*. at ¶¶ 9, 10, 15). That cotton-picker grease, Plaintiff claims, "was manufactured, distributed, and labeled by Panther." *Id*. at ¶ 17.

According to Plaintiff, the picker grease was "defective" and "not fit to protect and lubricate the spindles of his cotton picker machinery." *Id*. at ¶¶ 24-25, 30. As a result, Plaintiff asserts three causes of action—breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and negligence—and seeks to recover three types of damages: (1) "the entire purchase price of the" cotton-picker grease, (2) "the cost to repair the damage caused to his cotton picker machinery by the defective" grease, and (3) "damages related to the harvest of his 2019 cotton crop." *Id*. at ¶¶ 30, 31, 36. Because the Complaint fails to state a claim upon which relief can be granted, all three of Plaintiff's claims against Panther should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1]    Although Plaintiff's factual allegations must be accepted as true for purposes of this Motion, Panther reserves the right to dispute—and categorically denies—the factual basis for Plaintiff's claims. This Court, however, need not ever reach the underlying factual merit of Plaintiff's claims because the Complaint fails to state a claim upon which relief can be granted as required by Rule 12(b)(6).

## III.  ARGUMENT

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the complaint need not contain detailed factual allegations, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Therefore, "to survive a motion to dismiss, the 'complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id*. (quoting *Mezibov*, 411 F.3d at 716).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.  Here, Plaintiff's Complaint does not state a plausible claim for relief.  Therefore, his claims should be dismissed pursuant to Rule 12(b)(6).

### B.  Plaintiff's negligence claim fails because it is barred by the economic-loss rule.

The economic-loss rule "bars the purchasers of defective products from recovering economic/pecuniary damages from the manufacturer or distributor of the product." *Hasler Aviation, LLC v. Aircenter, Inc.*, No. 1:06-cv-180, 2007 U.S. Dist. LEXIS 56856, at *23 (E.D. Tenn. Aug. 3, 2007) (citing *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995)).[2]  The "rationale" for the economic-loss rule "is that, in the absence of personal injuries or property damage, a defective product has simply 'not performed as expected' and 'the buyer's

---

[2] Where, as here, a federal court's subject-matter jurisdiction is based on diversity of citizenship, the Court must apply state substantive law.  *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019).  Accordingly, for purposes of this Motion, Panther assumes that Tennessee law governs Plaintiff's claims.

remedy should be governed by the rules of contract, which traditionally protect expectation interests." *Americoach Tours, Inc. v. Detroit Diesel Corp.*, Nos. 04-2016, 05-2067, 2005 U.S. Dist. LEXIS 40182, at *6 (W.D. Tenn. Sept. 23, 2005) (citing *Ritter*, 912 S.W.2d at 133). The economic-loss rule "draws the line between tort and warranty by barring recovery for economic losses in tort actions." *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001), *abrogated on other grounds by Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016). By barring the use of tort to recover economic losses, the economic-loss rule "preserves an important distinction between the law of contracts and the law of torts." *Milan Supply Chain Sols. Inc. v. Navistar Inc.*, No. W2018-00084-COA-R3-CV, 2019 WL 3812483, 2019 Tenn. App. LEXIS 390, at *11 (Tenn. Ct. App. Aug. 14, 2019). Plaintiff's claims against Panther ignore this distinction and, in doing so, run afoul of the economic-loss rule.

"A purely 'economic loss' means a defective product causes neither personal injury nor damage to other property but damaged only [the] 'product itself.'" *Hasler Aviation, LLC*, 2007 U.S. Dist. LEXIS 56856, at *23 (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986)). "Economic losses can take two forms—direct economic losses and consequential economic losses attributable to the product." *McLean v. Bourget's Bike Works, Inc.*, No. M2003-01944-COA-R3-CV, 2005 WL 2493479, 2005 Tenn. App. LEXIS 645, at *18 (Tenn. Ct. App. Oct. 7, 2005); *see also Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009). "Direct economic losses relate to the product itself and include costs of repairing or replacing the product or the diminution in the product's value because it is of an inferior quality or does not work for the general purposes for which it was manufactured and sold." *Id.* "Consequential economic losses" for their part, "include all other economic losses attributable to the product itself such as the loss of profits resulting from an inability to use the defective

product." *Id*.

In his Complaint, Plaintiff contends that Panther acted negligently in "marketing, labeling, and selling a product as fit to be used as" cotton-picker grease "that was not actually fit to be used for that purpose." (Doc. # 1 at ¶ 36). In support of his claim, Plaintiff alleges that "the complete failure of the 'picker grease' to fulfill the purpose of lubricating and protecting the cotton picker spindles" caused him three types of damage: (1) "the entire purchase price of the product," (2) "the cost to repair the damage caused to his cotton picker machinery," and (3) "damages related to the harvest of his 2019 cotton crop." (Doc. # 1 at ¶ 31). All three of these alleged damages constitute purely economic loss. Therefore, Plaintiff's negligence claim is barred by the economic-loss rule.

### 1.     The Purchase Price of the Product

Plaintiff claims that, because of the allegedly defective cotton-picker grease, he sustained economic losses amounting to "the entire purchase price of the [grease] product." (Doc. # 1 at ¶ 31). This category of damages falls squarely within—and is barred by—the economic-loss rule. *See Lincoln Gen. Ins. Co.*, 293 S.W.3d at 489 ("Direct economic loss may be measured by the defective product's cost of repair or replacement."). "When a party attempts to use tort law to recover the cost of replacing a defective product sold to it for use in its business, this cost is called … an 'economic loss' to distinguish it from an injury to the plaintiff's person or property (property other than the product itself)." *Autozone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 951 (W.D. Tenn. Sept. 10, 2010) (citing *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990)). Because the "body of law designed for such disputes" is "contract law," not tort, Plaintiff's attempt to recover "the entire purchase price" of the allegedly defective cotton-picker grease is precluded by the economic-loss rule. *See id*.

### *2.     The Cost to Repair the Cotton Picker Machinery*

Next, Plaintiff seeks to recover "the cost to repair the damage caused to his cotton picker machinery." (Doc. # 1 at ¶ 31).  Despite Plaintiff's attempt to characterize these costs as "property damage," (*See id*. at ¶¶ 25-26), such damage is "more accurately classified as 'economic loss[ ].'" *Trinity Indus.*, 77 S.W.3d at 171.  Again, to recover in tort for damages caused by a defective product, the plaintiff must allege that the defective product caused "personal injury, death, or property damage." *Lincoln Gen. Ins. Co.*, 293 S.W.3d at 489.  The Tennessee Supreme Court has interpreted "property damage" to mean "damage to property *other than* the defective product." *Id*. at 492 (emphasis added).  "Other property," for purposes of the economic-loss rule, "does not include the type of property that one would reasonably expect to be injured as a direct consequence of the failure of the defective product, as these losses are essentially damages for failed commercial expectations, or loss of the benefit of the bargain." *Trinity Indus.*, 77 S.W.3d at 173 n.1.

Here, Plaintiff has failed to allege damage to "other property" under Tennessee law.  Instead, all Plaintiff has alleged are damages for "failed commercial expectations"—that is, purely economic loss. *Id*.  As explained below, the cotton-picker grease is a component part of the larger product—the cotton picker—and therefore, any damage caused by the allegedly defective cotton-picker grease is merely damage to the "product itself," which is barred by the economic-loss rule.  And, even if the cotton-picker grease was not a component part of the cotton picker (and it is), damage to the cotton picker is precisely "the type of property that one would reasonably expect to be injured as a direct consequence of the failure of the" allegedly defective cotton-picker grease. *Id*.  Accordingly, "the cost to repair the damage caused to his cotton picker machinery," which Plaintiff seeks to recover, is barred by the economic-loss rule.  (Doc. # 1 at ¶ 31).

A plaintiff cannot avoid application of the economic-loss rule by claiming to have suffered

"property damage" if the only property allegedly damaged is the larger product of which the allegedly defective component product was a part. *See, e.g.*, *Americoach Tours, Inc.*, 2005 U.S. Dist. LEXIS 40182, at *6-11 (rejecting argument that "a component part of the bus, the heater, was the defective 'product itself' and that "the destruction of all other parts of the bus constitute[d] damage to 'other property'"); *Tenn. Farmers Mut. Ins. Co. v. Ford Motor Co.*, No. W2001-00046-COA-R3-CV, 2002 WL 1332492, 2002 Tenn. App. LEXIS 429, at *19 (Tenn. Ct. App. June 17, 2002) (holding that the entire vehicle, which had been "destroyed by the spontaneous combustion of a component part, constituted the 'product itself' for the purpose of determining whether the insured suffered only economic loss"). In this case, the only "property" Plaintiff claims was damaged is his cotton picker, of which the cotton-picker grease was merely a component part. As Plaintiff's Complaint explains, his "cotton picker requires grease to lubricate and protect its spindles" from damage during operation. (Doc. # 1 at ¶ 10). Therefore, the cotton-picker grease is simply a "component part" of the cotton picker and any alleged damage to the cotton picker—the "product itself"—does not constitute damage to "other property" under the economic-loss rule.

Moreover, to the extent Plaintiff argues that the cotton picker constitutes "other property," separate and apart from the allegedly defective cotton-picker grease because such grease had to be "added and replaced" after Plaintiff acquired the cotton picker, that argument is similarly flawed. "To determine whether replacement parts installed in a product constitute other property," this Court applies the "object of the bargain" test, which it adopted from the Third Circuit. *Americoach Tours, Inc.*, 2005 U.S. Dist. LEXIS 40182, at *15-16 (citing *Sea-Land Serv., Inc. v. Gen. Elec. Co.*, 134 F.3d 149, 153 (3rd Cir. 1998)). Pursuant to the "object of the bargain" test, "if a commercial party purchases all of the components at one time, regardless of who assembles them, they are integrated into one product." *Id.* at *16-17 (quoting *Sea-Land Serv., Inc.*, 134 F.3d at

154). And "[s]ince all commercial parties are aware that replacement parts will be necessary, the integrated product should encompass those replacement parts when they are installed in the product." *Id*. (internal alterations omitted); *see also Agrotors, Inc. v. Bell Helicopter Textron, Inc.*, No. 03-04345, 2004 WL 2039954 2004 U.S. Dist. LEXIS 18543 (E.D.Pa. Sept. 9, 2004) (holding that any replacement part becomes part of the pre-existing "product"); *Exxon Shipping Co. v. Pac. Res., Inc.*, 835 F. Supp. 1195, 1201 (D. Haw. 1993) ("An integrated product may have any number of components replaced with spare parts in the ordinary course of events. To hold that these parts are 'other property' would lead to absurd results."); *Albers v. Deere & Co.*, 599 F. Supp. 2d 1142, 1163 (D.N.D. 2008) (concluding that there is "no basis" to hold that "consumables essential to the functioning of a product, such as gasoline, oil and grease, should be considered 'other property'").

Thus, a replacement part—in this case, cotton-picker grease—which was "purchased to be installed and integrated with" the cotton picker is a "component" of the cotton picker. *Id*. The cotton-picker grease has "no use to the Plaintiff otherwise." *Id*. Put another way, when Plaintiff initially purchased the cotton picker, a "natural part of that bargain was the awareness that the [cotton picker] contained components," like cotton-picker grease, which "must be replaced within its lifetime." *Americoach Tours, Inc.*, 2005 U.S. Dist. LEXIS 40182, at *17. Because the replacement cotton-picker grease is a component part of the cotton picker, "even when procured in separate transactions," it "form[s] part of the integrated whole." *Id*. at *17-18. The cotton picker and the cotton-picker grease, together, "constitute the 'product itself' for the purpose of determining whether the [Plaintiff] suffered only economic loss." *Tenn. Farmers Mut. Ins. Co.*, 2002 Tenn. App. LEXIS 429, at *19.

Because the cotton-picker grease is merely a component part of the cotton picker—or, at most, a "replacement" component part of the cotton picker—any damage to the cotton picker

8

allegedly caused by the cotton-picker grease does not constitute damage to "other property." Instead, such damage is damage to the "product itself." *Americoach Tours, Inc.*, 2005 U.S. Dist. LEXIS 40182, at *6. Thus, the only "property damage" alleged in the Complaint is, in fact, purely "economic loss." Accordingly, the "economic loss doctrine limits" Plaintiff's "recovery to an action based in contract, and [he] cannot maintain an action in tort." *Tenn. Farmers Mut. Ins. Co.*, 2002 Tenn. App. LEXIS 429, at *19.

### 3.     Damages Related to the Harvest of Plaintiff's 2019 Cotton Crop

The economic-loss rule bars recovery not only for "direct economic losses," but also for "consequential economic losses." *See Autozone, Inc.*, 737 F. Supp. 2d at 951. "Consequential economic losses include all … economic losses attributable to the product itself, such as the loss of profits resulting from an inability to use the defective product." *Id*; *see also Barrette Outdoor Living, Inc. v. Vi-Chem Corp.*, No. 2:13-cv-289, 2015 WL 12547568, 2015 U.S. Dist. LEXIS 185531, at *34-35 (E.D. Tenn. Aug. 31, 2015). Because Plaintiff purchased the replacement cotton-picker grease for use in the cotton picker and for the production of his cotton crop, any resulting damage to the 2019 cotton crop constitutes a consequential economic loss, which is not recoverable in tort. *See Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 185531, at *35 (holding that any damage to the Red Cedar Panels, which was caused by the allegedly defective colored PVC pellets that plaintiff purchased and used to create a layer of colored plastic over the Red Cedar Panels, "must be considered a consequential economic loss and recovery of that loss must come via a contract action," not a negligence action); *see also Olin Corp. v. Lambda Elecs., Inc.*, 39 F. Supp. 2d 912, (E.D. Tenn. 1998) (dismissing plaintiff's product-liability claim that attempted to recover economic losses allegedly incurred because the defective product required plaintiff's plant to shut down).

9

By seeking to recover "damages related to the harvest of his 2019 crop," Plaintiff is claiming that the defective product affected the profits he generated from his 2019 cotton crop. (Doc. # 1 at ¶¶ 28, 31). This category of damage, like all others Plaintiff attempts to recover in tort, is barred by the economic-loss rule. "Under Tennessee law, a plaintiff cannot sue in tort for lost profits," and "conclusory labels notwithstanding," "damages for profits lost from a diminished [crop] harvest" is nothing more than "economic loss." *Fish Farms P'ship v. Winston-Weaver Co.*, No. 2:09-cv-163, 2010 WL 1925043, 2010 U.S. Dist. LEXIS 46864, at *11 (E.D. Tenn. May 12, 2010). Therefore, any "[p]rofits lost as a consequence of" the allegedly defective cotton-picker grease "are considered an economic loss." *Americoach Tours, Inc.*, 2005 U.S. Dist. LEXIS 40182, at *6.

In sum, because Plaintiff has failed to allege that he sustained personal injury or damage to "other property," Plaintiff's negligence claim "founders on the rocks of the economic-loss rule." *McLean*, 2005 Tenn. App. LEXIS 645, at *16. Accordingly, for the reasons stated herein, Plaintiff's negligence claim should be dismissed.[3]

### C. Plaintiff's breach-of-warranty claims fail because there is no contractual privity between Plaintiff and Panther.

Plaintiff also asserts claims for breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. (Doc. # 1 at ¶ 30). Both claims suffer from the same fatal flaw—there is no contractual privity between Plaintiff and Panther.

"In Tennessee, 'a warranty that the goods shall be merchantable is implied in a contract for

---

[3] Because Plaintiff's tort claim fails, his prayer for punitive damages also fails. (Doc. # 1 at ¶ 38). "[I]t is a general rule in Tennessee that punitive damages are only allowable in cases involving torts." *State Auto Ins. Co. v. Jones Stone Co.*, No. M2009-00049-COA-R3-CV, 2009 WL 4841080, 2009 Tenn. App. LEXIS 848, at *21 (Tenn. Ct. App. Dec. 15, 2009) (holding that punitive damages "are appropriate in tort actions and not in contract actions.") In the absence of any viable tort claim, Plaintiff has no right to receive punitive damages and this request should be denied and dismissed.

their sale if the seller is a merchant with respect to goods of that kind.'" *Autozone, Inc.*, 737 F. Supp. 2d at 948 (quoting Tenn. Code Ann. § 47-2-214(1)). A warranty that goods are fit for a particular purpose, on the other hand, is created "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Id*. at 949. And, critically here, "[f]or liability to be imposed because of a breach of warranty[,] privity must exist between the plaintiff and a defendant charged with the breach." *Walker v. Decora, Inc.*, 471 S.W.2d 778, 783 (Tenn. 1971); *Olney v Beaman Bottling Co.*, 418 S.W.2d 430, 431 (Tenn. 1967) ("[T]here is no implied warranty where there is no privity of contract" and "there is no implied warranty of fitness running with a product from the manufacturer to the consumer.").

Here, the Complaint fails to allege facts—and indeed, there are no facts—that establish contractual privity between Plaintiff and Panther. To the contrary, Plaintiff has alleged that he purchased grease from O'Reilly Auto Parts, *not* Panther. (Doc. # 1 at ¶¶ 15, 16, 18; Doc. # 1-1). Because Plaintiff has not alleged that he was in privity of contract with Panther, his warranty claims fail as a matter of law.

To be sure, there is a narrow exception to the privity requirement for warranty claims if the product at issue is "unreasonably dangerous." *Walker*, 471 S.W.2d at 782. But, even under the most generous reading of Plaintiff's Complaint, that exception is not applicable here. The exception comes into play only if a plaintiff pleads—and ultimately proves—two things: (1) that the allegedly defective product was "unreasonably dangerous" and (2) that the "unreasonably dangerous product has caused property damage or personal injury." *Americoach Tours, Inc.*, 2005 U.S. Dist. LEXIS 40182, at *21. Plaintiff's Complaint falls short in both respects. First, as discussed in detail above, Plaintiff has not sustained—nor has he alleged that he sustained—

personal injury or other property damage.  Second, nowhere in Plaintiff's Complaint does he allege that the cotton-picker grease was unreasonably dangerous, nor does he allege facts from which the Court could infer that the cotton-picker grease was unreasonably dangerous.  Accordingly, the lack of contractual privity is fatal to Plaintiff's breach-of-implied-warranty claims against Panther.[4]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Complaint fails to state a claim upon which relief can be granted.  Therefore, pursuant to Rule 12(b)(6), Defendant Panther Petroleum, LLC, respectfully requests that the Court dismiss all of Plaintiff's claims against it and dismiss it as a party to this action.

Respectfully submitted,

 S/ Adam P. Nelson
R. Dale Thomas (TN BPR No. 013439)
Adam P. Nelson (TN BPR No. 033681)
RAINEY KIZER REVIERE & BELL, PLC
209 East Main Street
P.O. Box 1147
Jackson, TN  38302
Telephone: 731.423.2414
Fax: 731.426.8150
Email: dthomas@raineykizer.com
          anelson@raineykizer.com

and

Brian P. Muething (*pro hac vice* forthcoming)
Amanda B. Stubblefield (*pro hac vice* forthcoming)
KEATING MUETHING & KLEKAMP PLL

---

[4] Although it is unclear whether Plaintiff seeks to assert a claim for breach of express warranty, if he does, that claim fails for the very same reasons. (Doc. # 1 at ¶ 21). "The elements for breach of express warranty in Tennessee are: (1) the seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) the buyer was, in fact, induced by the seller's acts; and (3) the affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty." *Bunn v. Navistar, Inc.*, No. 19-5406, 2020 U.S. App. LEXIS 863, at *10 (6th Cir. Jan. 7, 2020).  And for "liability to be imposed because of a breach of an express warranty … privity must have existed" between the Plaintiff and Panther.  *Carroll v. Nat'l Car Rental Sys., Inc.*, 367 F. Supp. 474, 475 (E.D. Tenn. Sept. 18, 1973).

12

        One East Fourth Street, Suite 1400
        Cincinnati, OH  45202
        Telephone: 513.579.6400
        Fax: 513.579.6457
        Email: bmuething@kmklaw.com
             astubblefield@kmklaw.com

*Attorneys for Defendant,*
*Panther Petroleum, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of January, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report.


         S/ Adam P. Nelson

9730380.1