IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION AT JACKSON

| | |
|---|---|
| TAYLOR SULLIVAN,<br><br>          Plaintiff,<br><br>v.<br><br>PANTHER PETROLEUM, LLC; and,<br>O'REILLY AUTOMOTIVE STORES, INC.<br>d/b/a O'REILLY AUTO PARTS,<br><br>          Defendants. | Civil Action No. 2019-cv-01259 |

MEMORANDUM OF LAW IN SUPPORT OF RESPONSE
IN OPPOSITION TO MOTION TO DISMISS

The "economic loss doctrine" does not bar any of the claims made by Taylor Sullivan in this lawsuit, for the simple reason that the defective good manufactured and foisted upon unwitting purchasers by Defendant Panther (lubricant/grease) damaged "other" property (Mr. Sullivan's cotton picker machinery) and so this case cannot be dismissed as a matter of law.

### I.  Standard of Review under Fed. R. Civ. P. 12(b)(6).

In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations of the complaint. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]").  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018); *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

1

Interpreting the *Twombly* standard, the Sixth Circuit stated:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . For a complaint to survive a motion to dismiss, the non-conclusory factual content and the reasonable inferences from that content, must be plausibly suggestive of a claim entitling a plaintiff to relief.

*Estate of Smith ex rel. Richardson v. United States*, 509 F. App'x 436, 439 (6th Cir. 2012) (internal quotation marks and citations omitted).

## II. Mr. Sullivan brought two claims for breach of warranty, one claim for negligent misrepresentation, and one claim for reckless damage to personal property.

The motion to dismiss made by Defendant Panther does not take care to address the type of claims actually made by Mr. Sullivan, but any sound analysis must begin there. (Docket Item #1 – Complaint, *passim*) Mr. Sullivan brought four separate claims: breach of warranty of fitness for a particular purpose (*see, e.g.,* Docket Item #1 – Complaint at ¶¶19 [no disclaimer of warranty], 30-31); breach of warranty of merchantability (*see, e.g., id.* at ¶¶19 [no disclaimer of warranty], 30-31); negligent misrepresentation (*see, e.g., id.* at ¶¶14, 17, 22, 25, 32-36); and, reckless damage to personal property, (Docket Item #1 – Complaint ¶38-43)

The "economic loss doctrine"[1] upon which Defendant Panther Petroleum relies so heavily in its motion to dismiss does not apply to any of the actual claims

---

[1] The terms "economic loss doctrine" and "economic loss rule" appear to be synonymous, and "economic loss doctrine" will be used in this memorandum since that is the term used by the Tennessee Supreme Court. The term will be placed inside quotation marks throughout this memorandum.

brought by Mr. Sullivan: not to breach of warranty claims; not to negligent misrepresentation claims; and, not to reckless damage to personal property claims.[2]

The "economic loss doctrine," as adopted in Tennessee most explicitly in *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487 (Tenn. 2009), prevents a party whose purchased product fails and damages only the failed product itself from making a tort claim for that damage. For example, in *Lincoln General Life Insurance*, the Tennessee Supreme Court refused to permit a tort claim for a defective bus, when the bus, ("the product itself"), was the only thing harmed by its defect: in that case, a turbocharger component of the bus failed and burned the bus. *Id.* at 488. Even upon close reading, though, the *Lincoln General Life Insurance* opinion reveals no clear reason why a party would bring a tort claim just for damage to the product alone. *Id. passim.* The Supreme Court opinion arose by way of answering a certified question from the U.S. District Court for the Middle District of Tennessee, and the underlying opinion in the district court does make clear why a products liability claim had been made: all express and implied warranties had been disclaimed by the manufacturer of the bus, leaving the purchaser with no warranty

---

[2] Two out-of-state cases contain the most succinct statement on this point. First, in *SRC Const. Corp. of Monroe v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013), the Court flatly held: "As to the breach of express warranty claim, the Court does not see how the economic loss doctrine could apply to such a claim because it sounds in contract, not tort." Second, in *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 618 (Mich. 1992) the Michigan Supreme Cour held that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations.")

3

claims at all. *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, No. 3:08-0368, 2009 WL 2983035, at *4-*7 (M.D. Tenn., Sept. 14, 2009) (discussing the validity of the disclaimers of all warranties) (copy of opinion attached as Appendix A to this memorandum). Consequently, the purchaser of the bus sought to accomplish by a tort claim what could not be accomplished by a contract claim. *See id.* Understanding the background reveals the rationale supporting the "economic loss doctrine": respect for contractual allocations of risk and refusal to reallocate contractually assigned risks through tort law. Lincoln General Life Insurance sought just such a reallocation, and the Tennessee Supreme Court denied it.

The important U.S. Supreme Court cited with approval by the *Lincoln General Life Insurance* court likewise manifests an underlying policy rationale of not reallocating contract risk by way of product liability or tort law. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 859-861 (1986). Close attention to detail in reading the *East River Steamship Corp.* reveals why only tort claims appeared for discussion in the case: all breach of warranty claims had been voluntarily dismissed as being barred by the applicable statute of limitations. *Id.* at 861 ("The initial complaint . . . alleged breach of contract and warranty as well as tort claims. But after Delaval interposed a statute of limitations defense, the complaint was amended and the charterers alone brought the suit in tort.") The passage of time barring the enforcement of contractual allocations of risk led the U.S. Supreme Court to refuse to reallocate those risks through tort law. *Id.* at 867 (deciding "whether a commercial product injuring itself is the kind of harm against which

4

public policy requires manufacturers to protect, independent of any contractual obligation").

Although more or less explicit in their discussions, most cases whose reasoning can be analyzed demonstrate adherence to the idea that the economic loss doctrine preserves the "benefit of the bargain" between parties who either did or could have allocated risk by means of a contract, rather than by means of tort law. *See, e.g.*, *Irish Venture, Inc. v. Fleetguard, Inc.*, 270 F. Supp. 2d 84, 86 (D. Mass. 2003); *Windward Aviation, Inc. v. Rolls-Royce Corp.*, No. CIV. 10-00542 ACK, 2011 WL 2670180, at *6 (D. Haw. July 6, 2011) ("To determine what constitutes 'the product' and what constitutes 'other property' for purposes of the economic loss rule, the Court must analyze the 'object of the bargain' between the parties.")

The policy undergirding the "economic loss doctrine" helps courts determine if the rule has any application to the facts of particular cases:  where it appears one party seeks to reallocate contractual risk due to statute of limitations or disclaimer problems with contract claims, the economic loss rule properly bars a claim; where those concerns do not exist, the rationale for the rule fails to exist.

Defendant Panther strives mightily to make Mr. Sullivan's claim something it is not, but Mr. Sullivan's actual allegations in his actual complaint demonstrated that none of the policy reasons underlying the development of the "economic loss doctrine" obtain in this case:  the cotton picker machinery and the grease/lubricant supplied by Defendant Panther are wholly different objects purchased in wholly different transactions (*see* Docket Item #1 – Complaint ¶¶9, 15-16, Exh. A); no warranties were

5

disclaimed in the present case, not any express nor any implied warranties, (*see* Docket Item #1 – Complaint ¶19); Tennessee's four year statute of limitations for breach of warranty claim has not yet now expired (*Compare* Docket Item #1 – Complaint ¶15 [2018 date of purchase] *with* Tenn. Code Ann. §47-2-725(1)); and, Tennessee requires no privity of contract to enforce a UCC warranty claim for property damage – once the product is sold the "warranties run with the product." Tenn. Code Ann. §29-34-104 *construed in Commercial Truck & Trailer Sales, Inc. v. McCampbell*, 580 S.W.2d 765, 773 (Tenn. 1979).

So, this Court should begin its analysis with the conclusion that the complaint filed in this case demonstrates, conclusively at this juncture, that Mr. Sullivan does not make his tort claim, or any claim in his complaint, as a way to reallocate contractual risk that had been arranged by the parties in an unfavorable way for him. This conclusion should be enough basis to deny the motion to dismiss, but even if it is not, the balance of the argument here demonstrates that Mr. Sullivan has stated a claim for relief in his complaint. Moreover, the absence of any attempted reallocation should inform the rest of the analysis here: at the motion to dismiss stage, where the defendant cannot show the presence of the reason for applying the rule, the inferences to be drawn in making the analysis of the rule should be drawn in favor of the non-moving party. *See Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). *Cf. also Windward Aviation, Inc.*, at *8 (holding that at summary judgment stage, moving party bears the burden of proving the object of the parties' original bargain so that application of the "economic loss doctrine" can be analyzed).

> III. **The complaint here specifically sought compensation for damage to property, i.e., for physical damage to "other property," (Mr. Sullivan's cotton picker), besides the grease/lubricant supplied by Defendant Panther.**

Stated in propositional form by the Tennessee Supreme Court, the "economic loss doctrine" is a rule that bars "recovery in tort for purely economic loss * * * when a product damages itself without causing personal injury or damage to other property." *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009). To apply the doctrine, two separate things must be analyzed: (1) whether the loss a purely economic loss; and, (2) whether the defective property caused some damage to "other property." *Id.* at 487-493.

> A. *Mr. Sullivan did not seek compensation for purely economic losses.*

Contrary to the characterization that the complaint sought damages for an economic loss, Mr. Sullivan expressly alleged that the grease manufactured, packaged, and sold by Defendant Panther caused extensive physical injury to his machinery:

> 25. The actual product provided to Taylor Sullivan was not fit to protect and lubricate the spindles of his cotton picker machinery, ==and in fact caused significant and extensive damage to the machinery==.

(Docket Item #1, Complaint ¶25 [highlighting added])  One item, the grease / lubricant, caused damage to another item, the cotton picker machinery: Mr. Sullivan sought no damages for loss of profit, nor for any kind of economic or pecuniary damages but rather for the damage caused to his equipment by the grease/lubricant. The cost to repair arising from physical damage to property, (as opposed to the cost arising from replacement of the defective part), is not an economic damage – it is property damage. *McCrary v. Kelly Tech. Coatings, Inc.*, 1985 WL

75663, at *3 (Tenn. App., Aug. 28, 1985) *discussed in Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 466 (Tenn. App. 2003).[3] Defendant Panther misses entirely the important distinction between the types of "repair" costs.

In one of the leading cases in Tennessee on the "economic loss doctrine," the Tennessee Supreme Court noted that a physical damage to property, any property, can be differentiated from pecuniary or economic type damages, i.e., a loss of profits: the plaintiffs in that case sought lost profits associated with a tomato crop, and so the case had to be dismissed under the "economic loss doctrine," whereas if the plaintiffs had sought property damages for the actual damage to the plants themselves, the economic loss rule would have had no application and case would not have been dismissed. Quoting the complaint in the case under analysis there, the Tennessee Supreme Court stated: "there was extensive damage to their crops as a consequence, thereby causing economic loss to the plaintiffs." *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 129 (Tenn. 1995). The *Ritter* court went on to say:

> Even the description of the loss reflected in the Sixth Circuit's order, "there was extensive damage to their crops," suggests physical damage to property for which recovery can be had under Section 402B. However, since the plaintiffs sued for "economic damages resulting from the lost profits," there can be no recovery under Section 402B.

*Id.* at 132. In the present case, by contrast, Mr. Sullivan asserted directly and unequivocally that the grease supplied by Defendant Panther "caused significant and

---

[3] "We concluded our opinion in McCrary by noting that there was no evidence that the component (the paint) caused physical damage to the end product (the swimming pool). In the case before us there is evidence that the component (the carbon dioxide) did cause damage to the end product (separate property of Messer and its customers)." *Messer Griesheim*, 131 S.W.3d at 465.

8

extensive damage" to his cotton picker. (Docket Item #1, Complaint ¶25)[4]

Mr. Sullivan made no claim for loss of profits nor for any pecuniary loss: instead, he made a direct claim for the damage caused to one piece of property, his cotton picker machine, by the grease manufactured, distributed, and sold into commerce by Defendant Panther.

> B. Application of the "economic loss doctrine" also fails because the grease/lubricant manufactured and sold by Panther damaged "other property" besides the grease, i.e., the grease damaged Mr. Sullivan's cotton picker machine.

Defendant Panther tries to make the grease/lubricant a component part of the cotton picker machinery, but it has no case law that, directly or by convincing analogy, demonstrates grease or a lubricant applied to a machinery is a component part of that machinery; Panther has no such case law for the simple reason that the English language will not support such a conclusion. "Component" part means something that "composes," "constitutes," or "makes up," something else. *See* 3 OXFORD ENGLISH DICTIONARY 620 (2d ed. 1989) (*q.v.* component). A component part is a "constituent part" or ingredient – "the various components of an electric motor[.]"

---

[4] The *Ritter* court noted, also: "The distinction between damages for economic loss and damages for injury to property is not always clear. * * * * The terms 'economic loss' and 'pecuniary loss' are synonymous for the purposes of this opinion and include loss of profits." *Ritter*, 912 S.W.2d at 129 n.1.

Mr. Sullivan made a specific claim for the cost of the defective grease/lubricant, and that type of damage may be recovered under a breach of warranty theory under the Uniform Commercial Code. Tenn. Code Ann. §47-2-711, §47-2-713. Mr. Sullivan will not be able to have a double recovery of damages, but he will be entitled to recover both tort and contract damages to the full extent of his loss.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 499 (1993) (*q.v.* component). In other words, "component" is a physical piece of the whole assembly, not a substance poured onto or into the whole assembly to lubricate its parts. A cotton picker remains a cotton picker without fuel and without grease – no sense exists in which those items are actually "part of" the cotton picker itself.

Even if the plain meaning of "component" were not so clear as to exclude grease or a lubricant from being a component party, Defendant Panther, respectfully, has not been completely forthright with this Court about the parameters of defining "other property" under the "economic loss rule," i.e., with the idea of a "component part" in actual practice.

In the case closest to being directly on point to the current dispute, the U.S. District Court for the District of Massachusetts determined, on a motion to dismiss, that an oil filter was not a component part of an engine, and thus the "economic loss doctrine" did not bar recovery for damage to the engine against the seller and manufacturer of the oil filter, after the oil filter failed:

> The object of Irish Venture's bargain with Rose's Oil was an oil filter. The filter, once installed, caused damage not only to itself - damage which is presumably adequately addressed by contract damages - but also to the engine, which was purchased in an entirely separate bargain, and cannot be said to have been any part of the deal struck between Irish Venture and Rose's Oil.

*Irish Venture, Inc. v. Fleetguard, Inc.*, 270 F. Supp. 2d 84, 86 (D. Mass. 2003). At least four cases have followed the reasoning of the *Irish Venture* court, and Defendant Panther ignores those cases altogether, not even bothering to inform the court that authority contrary to its argument exists:

10

- ➢ *Windward Aviation, Inc. v. Rolls-Royce Corp.*, No. CIV. 10-00542 ACK, 2011 WL 2670180, at *6 (D. Haw. July 6, 2011) (holding that materials submitted at summary judgment stage did not show a replacement turbine part on helicopter was purchased at same time or was object of original bargain for the helicopter itself, and thus the "economic loss doctrine" did not apply");

- ➢ *Ins. Co. of N. Am. v. Man Engines & Components, Inc.*, No. 05-60699-CIV, 2006 WL 8432178, at *4 (S.D. Fla. June 27, 2006) (defective engine "bargained for, purchased and added subsequent to the original purchase of the vessel" was separate from vessel, thus "economic loss rule" did not bar claim for damage to boat caused by defect in the engine);

- ➢ *Ice Fern Shipping Co. v. Golten Serv. Co.*, No. 1:04-CV-20741, 2005 WL 3692840, at *3 (S.D. Fla. Mar. 22, 2005) (holding that a vessel's engine was "other property" when damaged by a separately purchased defective governor and thus the "economic loss doctrine" did not bar recovery in tort for the damage caused by the governor); and,

- ➢ *Mountain W. Helicopter, LLC v. Kaman Aerospace Corp.*, 310 F. Supp. 2d 459, 465 (D. Conn. 2004) (applying Connecticut law to facts involving the destruction of helicopters caused by the failure of separately purchased clutch assemblies placed on the helicopters, and noting that "majority of the courts addressing the issue" have decided the issue in the same manner).

Defendant Panther does refer to one case, in passing, that mentions "gasoline, oil, and grease." (Docket Item #17 – Defendant's Memorandum of Law, p. 8, citing

11

*Albers v. Deere & Co.*, 599 F. Supp.2d 1142, 1163 (D.N.D. 2008)), but the *Albers* case analyzed the converse facts of the present case: in a case involving a defective header that destroyed a combine unit, the *Albers* court briefly mentioned whether $500 of fuel in the combine at the time the defective header caused its destruction be "other property" the damage to which would overcome the "economic loss doctrine." 599 F.Supp.2d at 1163. The *Albers* court seemed concerned, in part, that permitting *de minimis* items to qualify as "other property" would defeat the purpose of the "economic loss doctrine" in the first place, since *de minimis* items almost always would be involved in equipment destruction. *Id.* The *Albers* court said nothing about the converse situation: when the *de minimis* property destroys the far more valuable property, is the far more valuable property "other property" for the purpose of the "economic loss doctrine," but the analysis suggests that it would be, for if the *de minimis* property destroys or damages the far more valuable property, no *de minimis* concern is present.[5] Defendant Panther asserts that *Albers* stated a proposition supporting its statement that "cotton-picker grease-which was "purchased to be installed and integrated with" the cotton picker is a "component" of the cotton picker." (Docket Item #17 – Defendant's Memorandum of Law, p. 8) The

---

[5] It bears note the concerns about undermining the contractual allocation of risk played a central role in the *Albers* case: there the seller of the used combine and header units expressly disclaimed all warranties in a written bill of sale and the statute of limitations had expired on all warranty claims. *Albers*, 599 F. Supp.2d at 1164. The *Albers* court said: "In this case, no warranty was given, much less a warranty that would extend the four-year limitations period. Consequently, Albers's breach of warranty claims are barred by the statute of limitations since this action was filed more than four years after the sale of the combine and the header." *Id.*

*Albers* court, though, held no such thing: Panther's quoted phrase "purchased to be installed and integrated with" does not appear in the *Albers* decision on page 1194 or anywhere in the opinion; this Court will be able to read the *Albers* opinion and to discern that Defendant Panther places quotes and a cite around language that never appears in the *Albers* decision. More substantively, though, the *Albers* decision never says that if a defective "consumable" causes damage to a much larger separately purchased piece of equipment, that under the "economic loss doctrine" bars recovery in tort for the damage caused by the separately purchased consumable item, and the *Irish Ventures* case specifically held that the doctrine does not bar such a claim.

The reliance upon *Tenn. Farmers Mutual Ins. Co. v. Ford Motor Co.*, 2002 WL 1332492 (Tenn. App., June 17, 2002) (called "*TFMIC*")suffers from a similar flaw as reliance on *Albers*: Defendant Panther seeks to make *TFMIC* say something it does not say. In *TFMIC*, the Tennessee Court of Appeals took for granted there that the defective steering column had been a "component part" of the destroyed automobile from the beginning. 2002 WL 1332492, at *1-*6. In fact, in the second sentence of the opinion, the *TFMIC* court said: "No personal injuries resulted from the fires, and no other property was damaged." *Id*. at *1. At no point in the opinion did the *TFMIC* court determine that consumable parts purchased far after the original purchase were part and parcel of the "product itself," precluding recourse to tort liability for damages.

*Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457,

13

466 (Tenn. App. 2003), supports Mr. Sullivan's position that the grease/lubricant manufactured and distributed by Defendant Panther was a separate product that caused damage to other property. In that case, the Tennessee Court of Appeals held that contaminated "feedgas" distributed by Eastman Chemical constituted a product in itself, and when Messer Griesheim purchased that feedgas and it contaminated other gas, as well as ruined containers, a tort claim would exist for that damage. *Id.* The *Messer* court went on to hold that the cost of cleaning contaminated rail cars would not be included, *id.*, which seems hard to understand without reference back a prior Court of Appeals decision cited by the *Messer* court, which said:

> According to one writer, "[t]he principle that emerges from these two decisions [Walker and Curtis] is that the decreased value of an end product caused by a defective component is economic loss unless the component causes physical damage to the end product, in which case the loss is property damage."

*McCrary v. Kelly Tech. Coatings, Inc.*, 1985 WL 75663, at *3 (Tenn. App., Aug. 28, 1985) (cited and discussed by the *Messer* court at page 465 of that opinion).[6]

Defendant Panther cannot point to any case that holds that a fluid placed within a product long after the initial purchase is part of the "product itself," and the

---

[6] On page 465, the *Messer* court said: "We concluded our opinion in *McCrary* by noting that there was no evidence that the component (the paint) caused physical damage to the end product (the swimming pool)." In other words, the defective paint caused only economic harm, because it entailed only stripping it off and placing on a new coat, versus actual physical damage to the swimming pool. In the present case, though, the defective grease/lubricant did actually cause (and is alleged to have actually caused) physical damage to Mr. Sullivan's cotton picker. (Docket Item #1 – Complaint ¶25 ["in fact caused significant and extensive damage to the machinery"]) When physical damage occurs, the cost to repair or diminution in value is not economic harm, but property damage.

*Irish Venture* case, which appears to be the closest case factually to the present case, says just the opposite. The "economic loss doctrine" does not bar any of the claims brought by Mr. Sullivan.

IV. **In making its argument that a privity requirement exists for breach of warranty, Defendant Panther ignores applicable Tennessee statutory law (and a Tennessee Supreme Court case recognizing the impact of the statute) specifically dispensing with the privity requirement for breach of warranty claims.**

In its haste to escape responsibility for its malfeasance, Panther ignores a plain proposition of Tennessee law: claims for breach of warranty brought under the Uniform Commercial Code require no privity of contract to be enforceable:

> In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the Uniform Commercial Code, privity shall not be a requirement to maintain such action.

1972 Tenn. Pub. Acts ch. 672 *codified at* Tenn. Code Ann. §29-34-104 (highlighting added).[7] The Tennessee Supreme Court long ago gave a definitive explanation of this statute, in which it recounted had been passed to overrule a decision of that court holding that privity was required for a breach of warranty action under the Uniform

---

[7] Originally, the Tennessee Code Commission codified this statute at Tenn. Code Ann. §23-3004. Later, the codification changed to Tenn. Code Ann. §29-34-104, which is part of a chapter in the Tennessee Code entitled "Torts." The codification placement does not bear on the meaning of the statute, as the public act was passed as a stand-alone enactment, not as a part of any larger law, 1972 Tenn. Pub. Acts, ch. 672 (containing one substantive section, the law now codified at Tenn. Code Ann. §29-34-104) and the Tennessee Code Commission possesses no authority to change the meaning of any enactment of the Tennessee General Assembly, whether by wording change or by placement in the codification. Tenn. Code Ann. §1-1-108(a) ("the commission shall not alter the sense, meaning or effect of any act of the general assembly"). A copy of 1972 Tenn. Public Acts, ch. 672 is attached to this memorandum as Appendix B.

15

Commercial Code. *Commercial Truck & Trailer Sales, Inc. v. McCampbell*, 580 S.W.2d 765, 771-772 (Tenn. 1979):

> It was after these decisions that the provisions of T.C.A. s 23-3004 were enacted. We are constrained to the view that the Legislature meant exactly what it said that in all actions for personal injury or property damage predicated upon breach of warranty, including those arising under the Uniform Commercial Code, "privity shall not be a requirement to maintain said action."

*Id.* at 772 (highlighting added) (noting the specific rejection or abrogation of prior decisions of the Supreme Court as well as the Court of Appeals case of *Leach v. Wiles*, 429 S.W.2d 823 (Tenn. App. 1968)).

The specific rejection of *Leach v. Wiles* by the adoption of 1972 Tenn. Pub. Acts ch. 672 manifests a salient point here, for in its holding, the *Leach* court used language nearly identical to that used by Defendant Panther in its memorandum of law. *Compare Leach v. Wiles*, 429 S.W.2d 823, 832 (Tenn. App. 1968) *with* Docket Item #17 - Defendant Panther Memorandum of Law, p. 11. The *Leach* court stated:

> As we understand it, our Supreme Court has gone no further than to hold that in the absence of contractual privity, liability can be imposed upon the manufacturer for breach of implied warranty when 'one sells any product in a defective condition unreasonably dangerous to the user or to his property' as provided in 2 Restatement (Second) Torts, sec. 402A (1965).
>
> This rule, of course, places a much heavier burden of proof upon the purchaser than does the rule which allows recovery by the purchaser from his immediate seller under T.C.A. Sections 47-2-314 and 47-2-315 of the Uniform Commercial Code.

*Leach*, 429 S.W.2d at 832 (internal case law citations omitted). In its memorandum of law, Defendant Panther stated: "To be sure, there is a narrow exception to the

privity requirement for warranty claims if the product at issue is unreasonably dangerous." (Docket Item #17 - Defendant Panther Memorandum of Law, pp. 10-11)

Both of the cases cited by Defendant Panther, *Walker v. Decora, Inc.*, 471 S.W.2d 778 (Tenn. 1971); *Olney v Beaman Bottling Co.*, 418 S.W.2d 430 (Tenn. 1967) were abrogated or overruled by the Tennessee General Assembly when it passed 1972 Tenn. Pub. Acts ch. 672, an enactment designed expressly to do away with the privity requirement for breach of warranty claims.  The *McCampbell* court stated the present rule of law in Tennessee succinctly when it said:  "Essentially the statutory warranties are made to run with the product, at least in the range of its intended and reasonably anticipated use."  *McCampbell*, 580 S.W.2d at 773. [8]  Mr. Sullivan specifically and expressly claimed the warranty of fitness for a particular purpose and of merchantability, (Docket Item #1 – Complaint ¶30), and he need not prove privity to pursue those claims.  *McCampbell*, 580 S.W.2d at 773.

---

[8] To the extent the language in some opinions appears to conflict with the express holding of *McCampbell*, those opinions are potentially incorrect and at a minimum not binding authority.  *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-2016 B/V, 2005 WL 2335369, at *8 (W.D. Tenn., Sept. 23, 2005), for example, mentions that the court has found no cases that permit a breach of warranty claim for economic damages, but the statement appears not to heed the holding of *McCampbell*, which apparently no party brought to the attention of the Court there.  In any event, *McCampbell* says what it says and the 1972 Tenn. Pub. Acts ch. 672 says plainly what it says, which is that privity is not required to sustain a warranty claim when property damage exists.  "Property damage" perhaps means physical damage to an item of property other than the non-conforming object of the sale transaction, but as the discussion has shown that requirement obtains here.

## V. The "economic loss doctrine" has no application in negligent misrepresentation claims, which Mr. Sullivan expressly made in his complaint.

In *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128 (Tenn. 1995), the Tennessee Supreme Court reviewed its prior decision in *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428 (Tenn.1991) and reaffirmed the viability of negligent misrepresentation claims absent privity and even for economic-type losses. The *Ritter* court outlined the elements of such a claim, quoting *John Martin Co.*, as follows:

> By the use of this standard, liability in tort would result when, despite lack of contractual privity between the plaintiff and the defendant,
>
> > (1) the defendant is acting in the course of his business, profession or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
> >
> > (2) the defendant supplies faulty information meant to guide others in their business transaction; and
> >
> > (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
> >
> > (4) the plaintiff justifiably relies upon the information.

*Ritter*, 912 S.W.2d at 130 (quoting *John Martin Co.*, 819 S.W.2d at 431.   Mr. Sullivan pleaded all of the necessary elements of this claim in his complaint:

| Element | Location in Sullivan Complaint (Docket Item #1) |
|---|---|
| (1) Defendant acting in business for pecuniary interest | ¶¶11-12, 17 |
| (2) Defendant supplies faulty information meant to guide others in a business transaction | ¶¶14, 21, 25, 30-31, 32, 35<br><br>¶22: "In fact, the grease shown on Exhibit A, marketed and sold to Taylor Sullivan as 'picker grease,' was not 'picker grease' at all, but rather another type of grease not fit for use to lubricate and protect cotton picker equipment." |

| | |
|---|---|
| (3) Defendant fails to exercise reasonable care in communicating information | ¶¶25, 33 <br><br> ¶34: "Panther Petroleum, LLC was the only party with the ability to know the actual contents of the containers labeled for sale as grease fit for use to lubricate and protect cotton picker equipment." <br><br> ¶43: "Panther Petroleum, LLC consciously disregarded the risk of harm by placing a label representing that the product was fit to be used as grease for cotton picker machinery upon a large amount of product and causing harm to cotton picker machinery in the west Tennessee area." |
| (4) Plaintiff justifiably relies on the information supplied by defendant | ¶¶23-24 |

Mr. Sullivan thus stated a cause of action for negligent misrepresentation by the express content of a false label attached by Defendant Panther to its grease, representing that the grease could be used as "picker grease" when, in fact, it was not picker grease. While generalized statements about "effectiveness" will not support a misrepresentation claim, direct statements that a product is one thing, when in fact it is another, such as Mr. Sullivan asserted, do support a misrepresentation claim. *Ritter*, 912 S.W.2d at 131. In at least one case, a court found that the Restatement of Torts (Second) §552 negligent misrepresentation claim, (the same one adopted in Tennessee), could be used to address faulty information supplied to farmers on product labels. *Mainline Tractor & Equip. Co. v. Nutrite Corp.*, 937 F. Supp. 1095, 1105 (D. Vt. 1996).

Taylor Sullivan therefore prays that the motion to dismiss be denied and that this matter proceed to discovery and trial, and for such other relief to which he may be entitled.

Respectfully submitted,

<u>W. Lewis Jenkins Jr. #017423</u>
*Attorneys for Plaintiff Taylor Sullivan*
Jenkins|Dedmon|Hayes Law Group LLP
426 Troy Ave., P.O. Box 846, Dyersburg, TN 38024
Tel. No. 731.259.6100 /Fax No. 731.288.7540

<u>CERTIFICATE OF SERVICE</u>

Lewis Jenkins, counsel for Plaintiff, certifies that a copy of the forgoing document to which this certificate of service is attached was filed through the Court's ECF system and served upon the following person by operation of the ECF system, to all parties indicated on the electronic filing report on February 18, 2020:   R. Dale Thomas, Esq. (Attorney for Defendant Panther Petroleum, LLC) and John Ramsey McCarroll III, Esq. and Sarah Elizabeth Stewart, Esq. (Attorneys for O'Reilly Automotive Stores, Inc. d/b/a O'Reilly Auto Parts).

<u>W. Lewis Jenkins Jr.</u>