IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| TAYLOR SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:19-cv-01259-STA-jay |
| | ) |
| PANTHER PETROLEUM, LLC, and | ) |
| O'REILLY AUTOMOTIVE STORES, | ) |
| INC. | ) |
| | ) |
| Defendants. | ) |

ORDER PARTIALLY GRANTING AND PARTIALLY
DENYING DEFENDANT PANTHER PETROLEUM, LLC'S
MOTION TO DISMISS

Plaintiff Taylor Sullivan has filed this action against Panther Petroleum, LLC ("Panther"), and O'Reilly Automotive Stores, Inc. ("O'Reilly"), for damages he incurred as the result of an allegedly defective product sold by Panther to O'Reilly and then purchased by Plaintiff from O'Reilly. Jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332. Defendant Panther has filed a motion to dismiss the claims brought against it. (ECF No. 17.) Plaintiff has filed a response to the motion (ECF No. 19), and Defendant has filed a reply to the response. (ECF No. 25.) For the reasons set forth below, the motion to dismiss is **PARTIALLY GRANTED** and **PARTIALLY DENIED**.

Standard of Review

A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a Court will

presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the Court cannot "infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]'- that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Background

Plaintiff alleges that, on September 4, 2018, he purchased "a large quantity of 'picker grease'" from the O'Reilly Auto Parts store in Ripley, Tennessee, because the cotton picker he uses to harvest cotton "requires grease to lubricate and protect its spindles." (Compl. at ¶¶ 9, 10,

2

15, ECF No. 1) The cotton-picker grease "was manufactured, distributed, and labeled by Panther." (*Id.* at ¶ 17.) According to Plaintiff, the picker grease was "defective" and "not fit to protect and lubricate the spindles of his cotton picker machinery." (*Id.* at ¶¶ 24-25, 30.) As a result, according to Defendant, Plaintiff has asserted three causes of action — breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and negligence — and seeks to recover three types of damages: (1) the purchase price of the cotton-picker grease, (2) the cost to repair the damage caused to the cotton picker machinery by the defective grease, and (3) damages related to the harvest of Plaintiff's 2019 cotton crop. (*Id.* at ¶¶ 30, 31, 36.) Plaintiff contends that he has also alleged a claim of negligent misrepresentation.

Defendant argues that the complaint fails to state a claim upon which relief can be granted because the economic-loss doctrine bars Plaintiff's tort claim and the requisite privity of contract is lacking for Plaintiff's warranty claims.

## Analysis

### Negligence Claim

The parties agree as to the substantive law surrounding the economic-loss doctrine but disagree as to whether it applies to Plaintiff's negligence claim. The Tennessee Supreme Court explained the economic-loss doctrine thusly.[1]

> The economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property. In this context, "economic loss" is defined generally as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages–Tort or Contract?*, 114 U. Pa. L.Rev. 539, 541 (1966). Two types of economic loss, direct and consequential, occur when a defective product is damaged. *See, e.g.,*

---

[1] When a federal court's subject-matter jurisdiction is based on diversity of citizenship, the Court applies state substantive law. *See Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019).

> *Restatement (Third) of Torts: Products Liability § 21*, cmt. d (1998). Direct economic loss may be measured by the defective product's cost of repair or replacement. *Id.* Consequential economic losses, such as lost profits, result from the product owner's inability to use the product. *Id.*

*Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009) (adopting the economic-loss doctrine that, in a contract for the sale of goods when the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by the contract). The Tennessee Court of Appeals has explained that:

> The economic loss rule is a judicially created principle that requires parties to live by their contracts rather than to pursue tort actions for purely economic losses arising out of the contract. The rule comes into play when the purchaser of a product sustains economic loss without personal injury or damage to property other than the product itself. In that circumstance, the purchaser must seek a remedy in contract, not in tort.

*McLean v. Bourget's Bike Works, Inc.*, 2005 WL 2493479 at *5 (Tenn. Ct. App. Oct. 7, 2005) (citations omitted); *see also Americoach Tours, Inc. v. Detroit Diesel Corp.*, 2005 WL 2335369 at *2 (W.D. Tenn. Sept. 23, 2005) ("The rationale for the economic loss doctrine is that, in the absence of personal injuries or property damage, a defective product has simply 'not performed as expected' and 'the buyer's remedy should be governed by the rules of contract, which traditionally protect expectation interests.'")

Plaintiff has alleged that Panther acted negligently in "marketing, labeling, and selling a product as fit to be used as" cotton-picker grease "that was not actually fit to be used for that purpose." (Compl. ¶ 36, ECF No. 1). Plaintiff also alleges that "the complete failure of the 'picker grease' to fulfill the purpose of lubricating and protecting the cotton picker spindles" caused him three types of damage: (1) "the entire purchase price of the product," (2) "the cost to repair the damage caused to his cotton picker machinery," and (3) "damages related to the harvest of his 2019 cotton crop." (*Id.* at ¶ 31). All three of these alleged damages constitute purely economic

4

loss.[2] The question, therefore, before the Court is whether the cotton picker grease was a component part of the damaged product, i.e., the cotton picker, or whether it was a separate product. If the grease was merely a component part of the cotton picker, then the economic-loss doctrine would bar Plaintiff's claim for damages under a negligence theory. If it was "other property," then recovery in tort is permissible. *See, e.g.*, *Americoach Tours, Inc.*, 2005 WL 2335369 (rejecting argument that "a component part of the bus, the heater, was the defective 'product itself' and that "the destruction of all other parts of the bus constitute[d] damage to 'other property'").

The parties have presented competing case law in support of their arguments, but the most persuasive is a case cited by Defendant – *Albers v. Deere & Co.*, 599 F. Supp. 2d 1142 (D.N.D. 2008). In that case, the plaintiff purchased a used John Deere combine and a used John Deere header for the combine. Subsequently, the combine ignited and burned; both the combine and the header were destroyed. The plaintiff filed an action in state court "seeking to recover $119,814 in damages for the loss of the combine, header, and fuel. His complaint contained five causes of action: (1) negligent design or manufacturing; (2) negligent failure to warn; (3) contract/breach of warranties; (4) strict liability for manufacturing; and (5) strict liability for failure to warn." *Id.* at 1144.

The defendant removed the action to the United States District Court of North Dakota and filed a motion for summary judgment. The defendant argued, in part, that the economic-loss doctrine barred the plaintiff's tort claim. In granting the motion, the Court looked at whether the gasoline in the combine at the time of the fire was "other property" and concluded that it was not.

---

[2] In his response, Plaintiff clarifies that he is seeking compensation only for the damage to his cotton picker allegedly caused Panther's negligence. (Resp. p. 7, ECF No. 20.)

> Albers also argues that there was approximately $500 worth of gasoline in the combine at the time of the fire and that this constitutes "other property." However, Albers has not cited to any case that supports the conclusion that consumables essential to the functioning of a product, such as gasoline, oil, and grease, should be considered "other property," and the court concludes there is no basis for such a conclusion. *Cf. Sea–Land Service, Inc. v. General Elec. Co.*, [134 F.3d 149, 153 (3d Cir.1998)] (holding that replacement parts were not separate products because it was known at the time of the original purchase that the parts would have to be replaced); *Rich Products Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937, 970–972 & n. 31 (E.D. Wis. 1999) (denying tort recovery when the "other property" damage was *de minimus* and citing other cases reaching the same conclusion). Obviously, given the number of products that use consumables, characterizing them as "other property" would subvert the policies behind limiting tort recovery when the only damage is to the product itself.

*Albers*, 599 F. Supp.2d at 1163.

The Court accepts the well-reasoned opinion of the North Dakota District Court that "consumables essential to the functioning of a product, such as gasoline, oil, and grease" should not be considered "other property." In the present case, the complaint alleges that the "cotton picker requires grease to lubricate and protect its spindles" from damage during operation, (Compl. at ¶ 10, ECF No. 1), thus indicating that Plaintiff knew at the time of the original purchase that the grease would have to be replaced. Accordingly, the Court finds that the cotton-picker grease was a "component part" of the cotton picker and any alleged damage to the cotton picker — the "product itself"— does not constitute damage to "other property" under the economic-loss doctrine. *C.f. Agrotors, Inc. v. Bell Helicopter Textron, Inc.*, 2004 WL 2039954 (E.D. Pa. Sept. 9, 2004) (holding that any replacement part becomes part of the pre-existing product); *Exxon Shipping Co. v. Pac. Res., Inc.*, 835 F. Supp. 1195, 1201 (D. Haw. 1993) ("An integrated product may have any number of components replaced with spare parts in the ordinary course of events. To hold that these parts are 'other property' would lead to absurd results."). Therefore, Plaintiff's negligence claim against Defendant Panther must be dismissed.

Plaintiff also maintains that he has stated a claim for negligence misrepresentation. Defendant contends that the complaint fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure as to a claim of negligent misrepresentation.[3] As noted by Defendant, this Court has held that "[c]laims of negligent misrepresentation must be pled with the particularity required by the heightened pleading standard of Rule 9(b)." *Asemota v. Suntrust Mortg., Inc.*, 2012 WL 12550260 at *9 (W.D. Tenn. June 18, 2012) (citation omitted).

> Thus, at minimum, plaintiffs must "allege the time, place[,] and contents of the misrepresentations on which they relied." The elements of negligent misrepresentation require a plaintiff to establish that "the defendant supplied information to the plaintiff; that the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information."

*Id.* (citations omitted); s*ee also Kattawar v. Logistics & Distrib. Servs., Inc.*, 2015 WL 508011 at *25-26 (W.D. Tenn. Feb. 6, 2015) (stating that a complaint alleging negligent misrepresentation "must 'generally (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud.'"(quoting *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014))).

In the present case, the complaint is titled "Complaint for Damages (Breach of Warranty, Negligence, and Damage to Personal Property.") (Compl. ECF No. 1.) In his response to Defendant's motion, Plaintiff states that his negligent misrepresentation claim is contained in paragraphs 14, 17, 22, 25, 32-36. (Resp. p. 2, ECF No. 20.)

---

[3] Rule 9(b) provides: "Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Paragraph 14 alleges that "[i]n placing labels upon products, Panther Petroleum, LLC made a specific representation to customers as to the content, quality, and suitability of any particular product, including grease."

Paragraph 17 alleges that "[t]he product shown as "picker grease" on the bill of sale was manufactured, distributed, and labeled by Panther Petroleum, LLC."

Paragraph 22 alleges that, although the label represented that the product was "picker grease," the product "was not 'picker grease' at all, but rather another type of grease not fit for use to lubricate and protect cotton picker equipment."

Paragraph 25 alleges that "[t]he actual product provided to Taylor Sullivan was not fit to protect and lubricate the spindles of his cotton picker machinery, and in fact caused significant and extensive damage to the machinery.

Paragraph 32 alleges that "Panther Petroleum, LLC placed a label upon the product ultimately sold to Taylor Sullivan and that label represented to purchasers that the product was fit for use to lubricate and protect cotton picker equipment."

Paragraph 33 alleges that "Panther Petroleum, LLC knew that O'Reilly Auto would sell the product labeled as fit for use to lubricate and protect cotton picker equipment to farmers for the specific use of lubricating and protecting the spindles on cotton picker equipment.

Paragraph 34 alleges that "Panther Petroleum, LLC was the only party with the ability to know the actual contents of the containers labeled for sale as grease fit for use to lubricate and protect cotton picker equipment."

Paragraph 35 alleges that "Panther Petroleum, LLC mislabeled as picker grease a product that was not picker grease and that would damage equipment if used as picker grease."

Paragraph 36 alleges that "[t]he actions of Panther Petroleum, LLC constitute negligence under the common law of Tennessee, specifically, marketing, labeling, and selling a product as fit to be used as grease for a cotton picker machine that was not actually fit to be used for that purpose."

Despite these allegations, there are no allegations as to what Defendant Panther specifically represented to Plaintiff nor are there allegations as to the content, time, or place of the alleged misrepresentation. Because the complaint is lacking in the specificity required by Rule 9(b) and because it does not identify any scheme or fraudulent intent by Defendant Panther, Plaintiff's purported negligent misrepresentation claim must also be dismissed.

Contract Claims

Plaintiff also asserts claims for breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. Defendant contends that both claims must be dismissed because there was no privity of contract between it and Plaintiff in that Plaintiff bought the picker grease from Defendant O'Reilly. Plaintiff acknowledges the lack of privity but maintains that "claims for breach of warranty brought under the Uniform Commercial Code require no privity of contract." (Resp. at 15, ECF No. 20.)

T.C.A. § 29–34–104 provides:

> Privity not required. - In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action. [Acts 1972 (Adj. S.), ch. 670, § 1; T.C.A., § 23–3004.]

This statute eliminates the requirement of vertical privity in lawsuits covered by the act. *Commercial Truck & Trailer Sales, Inc. v. McCampbell*, 580 S.W.2d 765 (Tenn. 1979). The cases cited by Defendant, *Walker v. Decora, Inc.*, 471 S.W.2d 778, 783 (Tenn. 1971), and *Olney v*

*Beaman Bottling Co.*, 418 S.W.2d 430, 431 (Tenn. 1967), for the proposition that, in order for liability to be imposed because of a breach of warranty, privity must exist between the plaintiff and a defendant charged with the breach, predate *McCampbell*. *See Wheeler v. John Deere Co.*, 1987 WL 18896 at *2 (Tenn. Ct. App. Oct. 27, 1987) ("Prior to 1972, lack of privity was a widely recognized and oft-used defense to products liability actions and breach of warranty actions.")

Defendant argues that the term "property damage" as used in the statute does not refer to the type of damages claimed by Plaintiff. However, the Tennessee Supreme Court has held that "statutory warranties are made to run with the product, at least in the range of its intended and reasonably anticipated use." *McCampbell*, 580 S.W.2d at 773. *See also Messer Griesheim Indus., Inc. v. Cyrotech of Kingsport, Inc.*, 131 S.W.3d 457, 466 (Tenn. Ct. App. 2003). Accordingly, the portion of Defendant's motion seeking to dismiss Plaintiff's breach of contract claims is denied. However, Defendant is not precluded from arguing at the summary judgment stage that Plaintiff's damages are not the type contemplated by the statute.

In summary, Defendant Panther's motion is **GRANTED** as to Plaintiff's negligence claims and **DENIED** as to his contract claims.

IT IS SO ORDERED.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: March 31, 2020